**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PETROLEUM DISTRIBUTION, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. _____** |
| | § | |
| **HZ INVESTMENT & PROPERTIES,** | § | |
| **LLC, HZ PROPERTIES &** | § | |
| **MARKETING, LLC, N & L REAL** | § | |
| **ESTATE VENTURES, LLC And HYDER** | § | |
| **K. LALANI,** | § | |
| | | |
| *Defendants*. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Petroleum Distribution, LLC ("Petroleum Distribution" or "Plaintiff") files this Original Complaint against Defendants HZ Investment & Properties, LLC, HZ Properties & Marketing, N & L Real Estate Ventures, LLC and Hyder K. Lalani ("HZ Investment," "HZ Properties," "N & L Real Estate," and "Lalani," respectively or collectively "Defendants") and respectfully shows the Court as follows.

## I.    PARTIES

1.    Plaintiff Petroleum Distribution is Texas limited liability company with its principal place of business located at 21226 Market Ridge, Suite #103, San Antonio, TX 78258. Petroleum Distribution is a citizen of Texas.

2.    Defendant HZ Investment is a Georgia limited liability company with its principal place of business at 3172 Preservation Circle Lilburn, Georgia 30047. HZ Investment is a citizen of Georgia.

3.    Defendant HZ Properties is a Georgia limited liability company with its principal place of

business at 3172 Preservation Circle Lilburn, Georgia 30047. HZ Properties is a citizen of Georgia.

4.      Defendant N & L Real Estate Ventures is a Georgia limited liability company with its principal place of business at 1336 Mandalay Court SW, Lilburn, Georgia 30047 and the registered agent is Shamsuddin Nassar. N & L Real Estate Ventures is a citizen of Georgia.

5.      Defendant Lalani is an individual resident and citizen of Georgia. His address is at 3172 Preservation Circle Lilburn, Georgia 30047.

## II.    JURISDICTION

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs and Plaintiff is a citizen of Texas and Defendants are citizens of Georgia.

7.      This Court has personal jurisdiction over Defendants because (1) they transact business within the State of Texas; (2) they have continuous and systematic contacts with the State of Texas; (3) they have purposefully availed themselves of the privileges and benefits of conducting business in the State of Texas; and (4) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Texas and involved Defendants. The Wholesale Fuel Supply Agreement ("Fuel Supply Agreement" or "FSA") §21(g) further provides that Dealer (Defendants HZ Investments and Lalani) "consent to the exclusive jurisdiction of any state or federal court empowered to enforce the Agreement located in Dallas County, Texas, and waives any objection thereto on the basis of personal jurisdiction or venue."

8.      Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §§ 1391 and 1400, because that is the judicial district where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. The Fuel Supply Agreement, to which Defendants HZ Investments and Lalani are parties and is the subject of this dispute, specifically states that venue

is proper in "a Federal District Court located in the Northern District of Texas" and the parties waive any challenge to the same. FSA §21(g).

9.      FSA §21 also provides that Texas law governs all rights and obligations of the Parties relating to the FSA.

### III.    FACTUAL BACKGROUND

10.      A jobber in the oil industry, also known as a petroleum marketer, is a person or company that purchases refined fuel from refineries and sells it to gas station owners or operators.  In this case, the owners/operators are the sub-sub-tenant. Jobbers enter into agreements with the oil companies to have a location branded with a particular brand, and only that type of fuel can be sold at that location. Exxon, Shell, BP, 76, Valero and Amaco ("Oil Companies") are considered top-tier brands.

11.      As part of the incentive package to brand a store, the oil company offers certain funds to the Jobber as an investment in the branding, imaging, equipment, machinery upgrades, and other business-related expenses. These are called upfront funds and need to be repaid during the term of the agreement, and the industry standard is 10 years. The agreements between the Jobber and the oil companies also require the purchase of a minimum number of gallons of fuel for each location.

12.      This case is a dispute between the jobber, Plaintiff Petroleum Distribution, and the Defendants, HZ Investment and Lalani as Guarantor, who agreed to purchase fuel pursuant to a Fuel Supply Agreement with Kings Oil Company LLC ("Kings Oil"). Kings Oil assigned all its rights, title, interest, payments, issues, profits and other rights and obligations to Petroleum Distribution. The other two defendants, HZ Properties and N & L Real Estate, conspired with and took actions with HZ Investment and Lalani to harm Plaintiff as set forth herein.

**A.    Mountain Express ("MEX") Oil Company's Leases with the Global Entities are Terminated in MEX's bankruptcy.**

13.     Mountain Express Oil Company (Jobber/Old Master Tenant, "MEX") entered into a series of sale-leaseback transactions to increase the number of stores that they supplied with fuel. As part of these transactions, they would sign Master Leases for a term of 20 years to ensure that they would have the exclusive right to sell fuel to a particular gas station location for the duration of the term.

14.     In April 2023, MEX declared Chapter 11 bankruptcy.

15.     On August 24, 2023, the bankruptcy court entered an order converting Chapter 11 cases to cases under Chapter 7 of the bankruptcy code. (Case No. 23-90147, TXSB, D.E. 1397).

16.     The August 24, 2023 order terminated various agreements, including all leases in which MEX was the tenant with its landlords affiliated with the Necessity Retail REIT, Inc. The Necessity Retail REIT landlords included numerous entities including Global Net Lease, Inc., and certain affiliated entities, namely AFN ABSPROP001, LLC ("AFN") and ARG ME19PCK001, LLC ("ARG"). (Related entities AFN, ARG, and Global and are sometimes referenced as "Global" or "Global/ARG" herein). The REITs purchased the properties in affiliated entities within their portfolios.

**B.      Global (through its affiliates AFN and ARG), the landlord and real property owner, enters into Master Leases for the 39[1] properties in the Fuel Supply Agreement, with Imperial Reliance LLC.**

17.     On June 9, 2023, AFN ABSPROP001 (as the landlord and real property owner) and Imperial Reliance LLC (as the Master Tenant, "Imperial") entered into a Master Lease for a total of 3 of the 39 locations at issue in this case. On June 12, 2023, AFN ABSPROP001, LLC, and Imperial entered into a Master Lease for a total of 18 of the 39 locations. On June 9, 2023, ARG ME19PCK001, LLC and Imperial entered into a Master Lease for a total of 18 of the 39 locations

---

[1] Of the 39 properties, 2 have been sold to unrelated third parties, so there are 37 properties at issue in this litigation.

(collectively, "Master Leases"). (Kings Oil Company LLC "Kings Oil" and Imperial Reliance LLC "Imperial" are related and are sometimes referenced as "Kings/Imperial" herein). The initial term of each Master Lease was 180 months. Master Leases §4.01.

18.     Master Leases §§4.04, 4.05 and 4.06 make clear that the Tenant (here Kings/Imperial) owns the personal property, including the underground storage tanks ("USTs"). For example, §4.04 allows the Tenant to remove personal property upon the expiration of the lease. Section 4.05 provides that the Tenant owns the personal property and will insure and can utilize the same. Section 4.06 states that the Tenant shall remove USTs, which are the tanks and associated product piping systems.

19.     Because Global did not have ownership of the underground storage tanks, among other personal property, Kings Enviro LLC ("Kings Enviro") was formed on July 12, 2023 to hold the USTs for its related entities Kings/Imperial. On approximately February 13 or 14, 2024, Kings Enviro registered the tanks in GA. Kings/Imperial transferred all membership interest in Kings Enviro to Plaintiff to align with the assignment and assumption of the FSA and Kings Enviro is now a wholly owned subsidiary of Plaintiff Petroleum Distribution. This clearly demonstrates that the USTs are property of Plaintiff.

20.     The Master Leases §18.23 contain a purchase option under which the Tenant shall have the option, during the first sixty (60) months of the Lease Term on one or more occasion, to purchase any properties subject to certain terms conditions set forth in the Master Leases. Imperial has not purchased the subject properties from AFN.


**C.      Kings Oil enters into a Fuel Supply Agreement, with HZ Investment and Lalani, which is assigned to Petroleum Distribution; and Imperial Reliance Enters into a Commercial Lease ("Sublease") with HZ Properties & Marketing, LLC and Lalani.**

1.  Assignment Agreement

21.    On September 1, 2023, Kings Oil and Petroleum Distribution entered into an Assignment and Assumption of Fuel Supply Agreement ("Assignment Agreement").

22.    Global and related entities had actual knowledge of the Assignment Agreement.

23.    Under the Assignment Agreement, Kings Oil assigned all Fuel Supply Agreements related to the Global/ARG properties to Petroleum Distribution, effective December 1, 2024. Specifically, Kings Oil assigned all its rights, title, interest, payments, issues, profits and other rights and obligations to Petroleum Distribution for the Fuel Supply Agreement discussed in the following paragraphs. Assignment Agreement, Recitals.

2. Fuel Supply Agreement

24.    On September 5, 2023, Kings Oil (as the Supplier) entered into a Wholesale Fuel Supply Agreement ("FSA") with HZ Investment and Lalani (as the Dealer and Subtenant). The FSA requires Kings Oil to supply motor fuels to HZ Investment and Lalani for the properties at issue in this case. Lalani signed a Personal Guaranty for the FSA. FSA, Exhibit C. HZ Investment and Lalani knew that Kings Oil had assigned the FSA to Petroleum Distribution when it entered into the FSA with Kings Oil.

25.    Global and related entities had actual knowledge of the Fuel Supply Agreement.

26.    Section 1 of the FSA provides for a 10-year initial term, and a 12-year term if the dealer purchases a location during the original 10-year term of the FSA beginning in October 2023. That is exactly what happened in this case – the Dealer and/or a related party purchased the locations at issue in this litigation. Thus, the FSA term is *extended* to October 2035 in the scenario in this case.

> In the event Dealer exercises its option to purchase a Location during the course of the original Term of the Agreement, the total Term of the Agreement shall be twelve (12) years for the Location from October 2023 through September 2035.

27.     Section 2(a) of the FSA states that "dealer agrees to buy and diligently to promote the sale of all grades and such quantities of Supplier's petroleum and other products…" and provides for compensatory delivery charges or shortfall penalties if "Dealer requests delivery of less than Supplier's established minimum volumes."

28.     FSA §2(b) sets forth the damages if the dealer fails to purchase less than 1,400,000 gallons of fuel products, as follows.

> Dealer covenants and agrees to purchase from Supplier and offer for sale, at the Location, only such gasoline, diesel fuel, other petroleum products or any additional motor vehicle fuel and/or energy-related products as are supplied and delivered by Supplier, including but not limited to those set forth on Schedule 3 for the full duration of the stated term of this Agreement, and to purchase not less than 1,400,000 gallons of gasoline and/or diesel fuel per month.  In the event Dealer has a shortfall by failing to purchase the minimum monthly gallons per month, Dealer shall pay over to Supplier within seven days of notice by Supplier to Dealer of such shortfall, charges in an amount equal to Four Cents ($0.04) times the difference between the number of actual gallons purchased and the minimum purchase requirement for such month.  There shall be no shortfall penalty until January 2024.[2]

   3. Commercial Lease ("Sublease")

29.     On September 5, 2023, Imperial Reliance (as the Landlord) entered into a Commercial Lease with HZ Properties and Marketing LLC and Hyder K Lalani (as the Tenants) for the same 39 locations as in the FSA ("Sublease"). The Sublease lease has a 10-year term, subject to renewal. Sublease §2. Lalani signed a Personal Guaranty for the Sublease.

30.     Global and related entities had actual knowledge of the Sublease.

31.     Section 39 of the Sublease contains an option to purchase the locations, which expired before Defendants purchased the properties at issue as discussed further in section D of this Complaint. Specifically, per §39, "Tenant and Landlord must agree on the Locations to be

---

[2] This reference to January 2024, further supports that the effective date of the agreement should be December 1, 2023, and the December 1, 2024 date is an error.

purchased, on or before December 31, 2023, and must notify Landlord of Tenant's intent to purchase in writing…. However, the final valuation of the purchase price for the purchased Locations, and the monthly rental fees for the remaining Locations, shall be determined and mutually agreed upon no later than January 31, 2024."

32.    Notably, §39 also provides that the total term of the FSA with Landlord and affiliates shall be for a total of 12 years, if the Tenant purchases any location as follows. Therefore, the term is extended for two years upon purchase.

> In the event the Tenant purchases any Location, Tenant agrees that the total term of any fuel supply agreement with the Landlord, or its affiliates, shall be for a total of twelve years, which includes any period of time the fuel supply contract was in force prior to the purchase of the purchased Locations by Tenant.

Therefore, it is clear under both the FSA and the Sublease that if a Dealer or Tenant, respectively, purchase any location, the FSA does not terminate, but rather, the term is *extended* from ten to twelve years, which is 2035 in this case.

**D.     HZ Investment Properties, HZ Properties & Marketing, N & L Real Estate Ventures, Lalani and/or Related Entities Purchased 12 or 13 of the Properties under the FSA and Plan to Purchase the Remaining Properties from Global on or about August 15, 2025.**

33.    On April 30, 2025, Petroleum Distribution sent HZ Investment a demand letter regarding a shortfall penalty based on a fuel purchase shortfall of 6,365,379 gallons at $.04, totaling $254,615.16, as of April 30th. The shortfall penalties have continued to accumulate since April, for June, July and August, as HZ Investment has continued to purchase fuel from Petroleum Distribution. The parties continued to correspond regarding this issue but have not reached an agreement.

34.    On May 1, 2025, Plaintiff sent notices to both HZ Investment, Lalani and Global/ARG regarding ownership of the tanks and associated equipment. As part of that notice, HZ Investment

and Lalani were explicitly notified that the Fuel Supply Agreement would not terminate upon purchase of the real property by HZ Investments or an affiliated entity.

35.    Following such notices, HZ Investments, Lalani and Global/ARG continued to stonewall Plaintiff and moved forward with their scheme to defraud Plaintiff, along with the other Defendants. In May and June 2025, the Master Leases and the Sublease were terminated. Specifically, on May 23, 2025 – the same date on which HZ Investment and/or related entities purchased the 12 or 13 properties - Imperial/Kings (the tenant of the Master Leases) received Termination Notices of the Master Leases from AFN/Global (the landlord), unilaterally and in contravention in terms of the Leases, as the notice did not provide a demand to cure or a date in which Imperial/Kings could cure such default. As set forth below, this was part of HZ Investment and Lalani's plan to avoid their obligations and breach the FSA.

36.    On June 5, 2025, Kings Oil's counsel sent a letter terminating their Sublease with HZ Properties for all 39 properties, based on its failure to pay rent. Thus, the Sublease termination was caused by HZ Properties and was part of HZ Investment and Lalani's scheme to avoid their obligations and breach the FSA.

37.    While facts were concealed from and not disclosed to Plaintiff at the time, HZ Properties' failure to pay rent, among other actions by Defendants, was part of HZ Investment, HZ Properties, N & L Real Estate and Lalani's scheme to purchase the properties from AFN/Global to terminate the Sublease and attempt to avoid HZ Investment and Lalani's obligations under the FSA. Specifically, HZ Investment and Lalani then used their and their co-conspirators' unethical actions as an illogical basis to argue that the purchase of the real property terminates the FSA or alternatively extort Plaintiff for more favorable FSA terms.

38.    Specifically, to keep the Fuel Supply Agreement in place, HZ Investment and Lalani are

now demanding a restated FSA which includes an upfront payment of $4,000,000 and a guaranteed rebate of $0.06/gallon of fuel. These terms are less favorable than the current FSA for Plaintiff.

39.    Throughout June, July and August 2025, Plaintiff made multiple offers to HZ Investment and Lalani in an effort to arrive at a mutually beneficial agreement. All offers have been rebuffed and HZ Investment and Lalani continued to put forth outrageous demands.

40.    Plaintiff later learned that HZ Investment and Lalani had hatched a scheme to purchase the properties from Global/AFN. Specifically, HZ Investment, HZ Properties, N & L Real Estate, Lalani and/or other related entities purchased 12 or 13 properties on May 23, 2025.

41.    HZ Investment and Lalani intentionally did not disclose, nor did Petroleum Distribution know that HZ Investment and Lalani were going to use the real property purchase as a ruse to terminate the FSA. Plaintiff also did not know that Defendants would use the purchase to deprive Plaintiff of their personal property, including the USTs. HZ Investment and Lalani knew that terminating the FSA and taking Plaintiff's personal property would cause Plaintiff millions of dollars in damages. If Plaintiff knew of HZ Investment and Lalani's and the other Defendants' intentions, Plaintiff would not have entered into the Assignment Agreement with Kings Oil or entered into the contractual relationship under the FSA with HZ Investment and Lalani, and therefore, would not have entered into agreements to purchase fuel from the Oil Companies.

42.    HZ Investment and Lalani are continuing to perpetrate their scheme as the remaining properties are scheduled to be purchased by the Defendants and/or related entities on approximately August 15, 2025.

43.    HZ Investment and Lalani knew that these property purchases would extend the term of the Fuel Supply Agreement from 10 to 12 years, under both the FSA and the Sublease. Therefore, they tried to find an excuse to assert that the FSA had terminated. While illogical, HZ Investment

and Lalani have asserted that termination of the Master Leases terminates the FSA, completely ignoring that they are the party who negotiated and entered into the FSA.

44.     In the alternative, HZ Investment and Lalani falsely asserted that ARG never approved the FSA. HZ Investment and Lalani know that Global and related entities had actual knowledge of the Sublease and FSA.

45.     HZ Investment and Lalani are also asserting that the purchase of the properties terminates the FSA because that would seek to bind a future property owner. HZ Investment and Lalani completely ignore that they are the *Tenants* in the Sublease with Imperial and the Dealers in the Fuel Supply Agreement, who negotiated and entered into the FSA with Plaintiff and the Sublease.

46.     In fact, FSA §1 and Sublease §39 address this exact scenario and explicitly provide for an *extension* of the FSA where a Dealer or Tenant purchases a Location. This extension would be from 2033 to 2035 in this case. Here, the Dealers and Tenants (who are HZ Investment and Lalani in the Sublease and HZ Investment and Lalani in the FSA) and/or related entities have purchased the properties.

> In the event Dealer exercises its option to purchase a Location during the course of the original Term of the Agreement, the total Term of the Agreement shall be twelve (12) years for the Location from October 2023 through September 2035.

FSA §1.

> In the event the Tenant purchases any Location, Tenant agrees that the total term of any fuel supply agreement with the Landlord, or its affiliates, shall be for a total of twelve years, which includes any period of time the fuel supply contract was in force prior to the purchase of the purchased Locations by Tenant.

Sublease §39.

47.     HZ Investment and Lalani's actions are clearly in violation of the parties' implied covenant of good faith and fair dealing. HZ Investment and Lalani's arguing that they are not bound by the FSA is particularly outrageous here because they signed the same FSA that was fully negotiated

between the parties that they are now trying to terminate or modify solely to their benefit. This is not a situation where a new, unrelated, third-party buyer is bound by an agreement that they did not enter into and FSA §39 clearly contemplates this issue by providing for an extension where a Tenant purchases a location in the Sublease.

48.    Plaintiff has and continues to supply fuel because it is Plaintiff's position that the FSA is not terminated based on the purchase of the locations and Sublease termination. On the contrary, it is extended. Also, HZ Investment and Lalani know that Plaintiff is contractually bound to purchase fuel from oil companies, such as Exxon, Shell, BP, 76, Valero and Amaco. If Defendants terminate and/or modify the FSA, Plaintiff will suffer significant damages in addition to the shortfall damages to date, based upon Plaintiff's inability to satisfy the contracts with the oil companies and/or their inability to sell the minimum amount of fuel Plaintiff is contractually obliged to purchase from the oil companies. Plaintiff will specifically have to repay the upfront funds received from the oil companies in the amount of $4,594,000 ("unams") if Plaintiff has to terminate the oil company contracts before their 10-year term expires.

49.    Furthermore, HZ Investment, Lalani and Global/AFN were notified on multiple occasions that Petroleum Distribution owns various costly personal property including underground storage tanks ("USTs"), both historically and during discussions in 2025. HZ Investment and Lalani have failed to address or compensate Plaintiff for this property and instead are exercising dominion and control over this property for the locations that Defendants and/or related entities have or plan to purchase, with the intent to deprive Plaintiff of the same.

50.    Finally, even if the FSA is terminated, there are certain terms and conditions that survive the FSA termination. These provisions include repayment of the upfront funds for termination of the oil company agreements before the 1-year terms and shortfall damages referenced earlier.

51.    Thus, Petroleum Distribution has been damaged at a minimum of $4,594,000 ("unams") and liquidated damages of $7,196,989 totaling $11,790,989, which are continuing to increase by HZ Investment and Lalani's continued breach of the FSA and all Defendants' violations as set forth herein.

#### IV.    V. CONDITIONS PRECEDENT

52.    All conditions precedent to the filing of this suit have been performed or have occurred.

#### V.    CAUSES OF ACTION AGAINST DEFENDANTS

**COUNT ONE: BREACH OF CONTRACT - HZ INVESTMENT & PROPERTIES, LLC, and HYDER K LALANI**

53.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

54.    Kings Oil and HZ Investment and Lalani entered into a valid enforceable contract (the FSA), which was assigned to Plaintiff Petroleum Distribution. Plaintiff is therefore a proper party to assert this breach of contract claim. Plaintiff has performed and continues to perform its contractual obligations by supplying fuel to the properties Plaintiff is required to do so under the FSA.

55.    HZ Investment and Lalani have and continue to materially breach the FSA by failing to purchase minimum fuel amounts, failure to remit shortfall damages, making false and misleading statements and/or omissions regarding their scheme to avoid their obligations under the FSA and other violations of the terms and conditions of the FSA. *See* FSA §19, which addresses default, termination and liquidated damages.

56.    As a result of that breach, Plaintiff has suffered economic damages of at least $11,790,989, which are continuing to increase because Plaintiff is continuing to perform under the contract.

**COUNT TWO: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - HZ INVESTMENT & PROPERTIES, LLC and HYDER K LALANI**

57.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

58.    The FSA contained, as a matter of law, an implied covenant of good faith and fair dealing by which HZ Investment and Lalani were bound.

59.    By engaging in the practices, actions, and conduct described above, Defendants repeatedly breached the implied covenant of good faith and fair dealing in the FSA.

60.    As a direct and proximate result of HZ Investment and Lalani wrongful conduct Plaintiff has suffered damages, and will continue to suffer damages, which current are at least $11,790,989 and are continuing to increase because Plaintiff is continuing to perform under the contract.

## COUNT THREE: FRAUDULENT CONCEALMENT OR OMISSION - HZ INVESTMENT & PROPERTIES, LLC and HYDER K LALANI

61.     Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

62.    HZ Investment and Lalani concealed from and/or failed to disclose certain facts to Plaintiff regarding their purchase of the properties listed in the FSA and their plan to use such purchase to breach the FSA.

63.    HZ Investment and Lalani had a duty to disclose those facts to Plaintiff.

64.    The facts were material.

65.    At the time HZ Investment and Lalani failed to disclose such information, they knew that Plaintiff was ignorant of the facts and that Plaintiff would not have an equal opportunity to discover the facts.

66.    HZ Investment and Lalani were deliberately silent when they had a duty to speak.

67.    By failing to disclose their scheme HZ Investment and Lalani intended to induce Plaintiff to enter into the Assignment Agreement with Kings Oil, enter into the contractual relationship under the FSA, with HZ Investment and Lalani, and enter into contracts with the Oil Companies.

68.    No party, including Plaintiff, would have agreed to the FSA terms if HZ Investment and

Lalani had disclosed their plan to cause Plaintiff millions of dollars in damages based on the ludicrous position that the FSA is terminated based on their own and/or related party property purchase and other actions by Defendants.

69.    Plaintiff relied on HZ Investment and Lalani's nondisclosure.

70.    Plaintiff was injured as a result of acting without the knowledge of the undisclosed

**COUNT FOUR: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS - HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC, N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI**

71.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

72.    HZ Investment, HZ Properties, N & L Real Estate, and Lalani know that Plaintiff is contractually bound to purchase fuel from the Oil Companies. If HZ Investment and Lalani terminate and/or modify the FSA, Plaintiffs will suffer significant damages based upon Plaintiff's inability to satisfy the contracts with the Oil Companies and/or their inability to sell the fuel they are contractually obliged to purchase.

73.    HZ Investment, HZ Properties, N & L Real Estate, and Lalani's actions of purchasing the properties at issue and HZ Investment and Lalani's assertion that these purchases terminate the FSA resulted in Plaintiff's loss of economic benefits and profits.

**COUNT FIVE: CONVERSION - HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC, N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI**

74.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

75.    Plaintiff had the right to possess assets, including certain personal property and underground storage tanks at the properties that HZ Investment, HZ Properties, N & L Real Estate, and/or related entities have already or plan to purchase from AFN/Global.

76.    HZ Investment, HZ Properties, N & L Real Estate, Lalani and/or related entities have

wrongfully exercised dominion and control over Plaintiff's property.

77.    Plaintiff has suffered injury as a result of HZ Investment, HZ Properties, N & L Real Estate, and Lalani's actions.

**COUNT SIX: TEXAS THEFT LIABILITY ACT 196 - HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC, N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI**

78.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

79.    Plaintiff had possessory right to assets, including personal property and storage tanks.

80.    HZ Investment, HZ Properties, N & L Real Estate, Lalani and/or related entities appropriated those assets by taking it without Plaintiff's effective consent by the theft of personal property under Texas Penal Code §31.03.

81.    HZ Investment, HZ Properties, N & L Real Estate, Lalani and/or related entities unlawful taking was made with the intent to deprive the Plaintiff of the property.

82.    The Plaintiff sustained damage as a result of the theft.

**COUNT SEVEN: CIVIL CONSPIRACY - HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC, N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI**

83.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

84.    Defendants had a meeting of the minds and agreed together to accomplish the unlawful theft and/or conversion of Plaintiff's personal property and underground storage tanks (USTs) without compensation to Petroleum Distribution.

85.    The object of the conspiracy was to accomplish the wrongful appropriation of Plaintiff's personal property and USTs and to use such property to Defendants' advantage and to Plaintiff's disadvantage.

86.    At least one of the Defendants committed an overt unlawful act to further the scheme. For

example, HZ Investment, HZ Properties, N & L Real Estate, LLC and/or Lalani purchased real property. Defendants have not addressed nor compensated Plaintiff for the personal property and USTs located on the real property. Instead, the purchasers have continued to utilize the personal property to their benefit.

87.    Plaintiff was injured as a proximate result of the theft and/or conversion of its personal property and USTs, by HZ Investment, HZ Properties, N & L Real Estate and/or Lalani's theft and conversion, and Plaintiff seeks actual and consequential damages from Defendants as a result.

## COUNT EIGHT: UNJUST ENRICHMENT, IN THE ALTERNATIVE – HZ INVESTMENT & PROPERTIES, LLC, and HYDER K LALANI

88.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

89.    HZ Investment and Lalani were unjustly enriched by receiving the assets of the Plaintiff.

90.    HZ Investment and Lalani acquisition of fuel and other benefits in the Fuel Supply Agreement caused detriment to the Plaintiff.

91.    There was no contract between the parties.

92.    Plaintiff expected to receive payment from HZ Investment and Lalani.

93.    HZ Investment and Lalani accepted, used, and enjoyed the benefit of the assets.

94.    Plaintiff should be compensated for the same.

## COUNT NINE: UNJUST ENRICHMENT – HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC AND N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI

95.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

96.    HZ Investment, HZ Properties, N & L Real Estate, and/or Lalani were unjustly enriched by receiving the assets of the Plaintiff, namely the personal property and underground storage tanks.

97.    HZ Investment, HZ Properties, N & L Real Estate, and Lalani acquisition of the assets caused detriment to the Plaintiff.

98.     There was no contract between the parties.

99.     Plaintiff expected to receive assets from HZ Investment, HZ Properties, N & L Real Estate, and/or Lalani for the personal property and USTs.

100.    HZ Investment, HZ Properties, N & L Real Estate, and/or Lalani misappropriated, accepted, used, and enjoyed the benefit of the assets.

101.    Plaintiff should be compensated for the same.

## COUNT TEN: SPECIFIC PERFORMANCE, IN THE ALTERNATIVE - HZ INVESTMENT & PROPERTIES, LLC and HYDER K LALANI

102.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

103.    Plaintiff and HZ Investment and Lalani have entered into a valid and enforceable Fuel Supply Agreement.

104.    Plaintiff performed and are ready, willing and able to perform the remaining contractual obligations.

105.    HZ Investment and Lalani have ability to perform but choose not to.

106.    There is no other adequate remedy at law.

## COUNT ELEVEN: EXEMPLARY DAMAGES – HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC, N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI

107.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein.

108.    Exemplary damages against HZ Investment, HZ Properties, N & L Real Estate, Lalani are appropriate in this case because HZ Investment, HZ Properties, N & L Real Estate, Lalani acted with bad faith and/or malice by intentionally orchestrating and participating in a scheme to purchase the properties from Global/AFN so HZ Investment and Lalani could attempt to avoid their

obligations under the Fuel Service Agreement with Plaintiff. They also exercised control over personal property and USTs owned by Plaintiff.

109.    By doing so, they interfered with Plaintiff's Fuel Service Agreement and Oil Company Contracts and committed other violations discussed herein.

110.    HZ Investment, HZ Properties, N & L Real Estate, and Lalani's actions resulted in Plaintiff's loss of economic benefits and profits.

111.    For all of the reasons set forth above, Plaintiff requests an award of exemplary damages in excess of its economic damages.

**COUNT TWELVE: ATTORNEYS FEES – HZ INVESTMENT & PROPERTIES, LLC, HZ PROPERTIES & MARKETING, LLC AND N & L REAL ESTATE VENTURES, LLC and HYDER K LALANI**

112.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth herein. Plaintiff, pursuant to the Fuel Supply Agreement § 20, Chapters 38 and 134A.005 of the Texas Civil Practices and Remedies Code, 18 U.S.C. § 1836 (b)(3)(D), and common law, seeks the recovery of its reasonable and necessary attorney's fees and costs.

### VI.    DEMAND FOR JURY TRIAL

113.    Plaintiff demands a trial by jury on all issues so triable.

### VII.    PRAYER

114.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon final trial by jury that Plaintiff recover a judgment against Defendants as follows:

a.    Entry of judgment in favor of Plaintiff against Defendants on all claims for relief;

b.    All compensatory damages sustained by Plaintiff as a result of Defendants' breaches of the FSA;

c.    Consequential and special damages caused by Defendants' breach of the FSA;

d.    Exemplary damages;

e.  Pre-judgment and post-judgment interest in the amounts permitted under Texas law;

f.  Costs of suit; and

g.  Any and all other legal and equitable relief as may be available under law that the Court may deem proper.

Date:  August 8, 2025                    Respectfully submitted,


By:  */s/ Sarah Q. Wirskye*
**SARAH Q. WIRSKYE**
Texas State Bar No. 24007885
swirskye@bradley.com
**BETHANIE LIVERNOIS**
Texas State Bar No. 24093787
blivernois@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
1201 Elm Street, Suite 4400
Dallas, Texas 75270
(214) 939-8700 (Telephone)
(214) 939-8787 (Facsimile)

/s/ Shyamie Dixit
**SHYAMIE DIXIT, ESQ.**
Texas Bar No. 24058198
4900 W. Expressway 83, Suite 260-B
McAllen, Texas 78501
3030 N Rocky Pt Dr W, Suite 430
Tampa, Florida 33607
T: (813) 252-3999
F: (813) 252-3997
C: (813) 992-8118
E: sdixit@dixitlaw.com
E: cmoreno@dixitlaw.com

**ATTORNEYS FOR PLAINTIFF PETROLEUM DISTRIBUTION LLC**